2005 UT App 246

**Beiwei LI, personal representative of the Estate of Beizhong Li, deceased, Plaintiff and Appellant,**

v.

**Shuyu ZHANG; Enterprise Rent–A–Car Company of Utah, a Utah corporation; Geico Indemnity Company, a Maryland corporation; and John Doe, whose true name is not known, Defendants and Appellees.**

No. 20040051–CA.

Court of Appeals of Utah.

June 3, 2005.

Earl D. Tanner Jr., Tanner & Tanner, Salt Lake City, for Appellant.

Bruce C. Burt, Nelson, Chipman, Quigley & Payne, Melinda A. Morgan, Richards, Brandt, Miller & Nelson, Stuart H. Schultz, Strong & Hanni, and Jeffrey C. Miner, Morgan, Meyer & Price, LC, Salt Lake City, for Appellees.

Before Judges GREENWOOD, ORME, and THORNE, Jr.

OPINION

THORNE, Jr., Judge:

¶ 1 Beiwei Li, as personal representative of the estate of Beizhong Li, appeals the trial court's grant of summary judgment to Enterprise Rent–A–Car Company of Utah. We conclude that Utah Code section 31A–22–314 does not relieve Enterprise of its duty to provide insurance coverage on its vehicles, even though there is other available insurance in excess of the statutory minimum coverage. *See* Utah Code Ann. § 31A–22–314 (2003). Accordingly, we reverse the trial

court's summary judgment order and remand this matter for further proceedings.

## BACKGROUND

¶ 2 Enterprise is a rental car company doing business in Utah. Pursuant to Utah's Financial Responsibility of Motor Vehicles Owners and Operators Act (the Act), Enterprise must provide certain minimum insurance coverage on its fleet of rental cars, including $25,000 in liability coverage. *See* Utah Code Ann. §§ 41–12a–101 to –806 (1998 & Supp.2004). Enterprise complies with the Act by maintaining a certificate of self-funded coverage under Utah Code section 41–12a–407. *See* Utah Code Ann. § 41–12a–407 (1998); *see also id.* § 41–12a–103(9) (1998).

¶ 3 In July 2000, Beizhong Li rented a vehicle from Enterprise in Utah. Li signed a rental agreement that included provisions authorizing Shuyu Zhang to drive the vehicle and authorizing the vehicle to travel to Wyoming and Idaho. Pursuant to the terms of the rental agreement, Li represented that he had personal automobile insurance meeting the minimum requirements of the Act and declined any coverage offered by Enterprise. Li acknowledged in the agreement that Enterprise was not providing any insurance coverage on the vehicle, and agreed to indemnify and hold Enterprise harmless from any claims arising out of the use of the vehicle.

¶ 4 On July 21, 2000, Li was killed when the rental car was involved in an automobile accident in Wyoming. At the time of the accident, Zhang was driving the vehicle. Li's estate subsequently sued Zhang and the unknown driver of a second vehicle that allegedly contributed to the accident. The suit also named Geico Indemnity Company as Li's uninsured and underinsured motorist carrier, and Enterprise as a self-insurer of its vehicle under the Act. Li's estate settled with Zhang and his insurer for the $100,000 policy limits of Zhang's liability coverage, and with Geico for the $200,000 combined policy limits of Li's uninsured and underinsured motorist policies. Li's estate contends that Li's damages greatly exceed even this

$300,000 recovery, and sought to recover an additional $25,000 from Enterprise as its self-insurance obligation under the Act.

¶ 5 Li's estate and Enterprise both sought summary judgment on the issue of Enterprise's liability under Utah Code section 31A–22–314. *See* Utah Code Ann. § 31A–22–314 (2003). Enterprise argued that section 31A–22–314 limited its obligation to provide coverage under the Act to situations where no other insurance meeting the Act's minimum requirements was available. *See* Utah Code Ann. § 31A–22–314(1) (requiring rental car companies to provide *primary* coverage meeting the Act's requirements "unless there is other valid and collectible insurance coverage"). Enterprise argued that because Li's estate had already recovered $300,000 from insurance coverage, a figure exceeding the $25,000 of liability coverage required by the Act, Enterprise was excused from its obligation to provide any coverage whatsoever. The trial court agreed with Enterprise and granted summary judgment. Li's estate appeals both the granting of Enterprise's motion and the denial of its own motion.

## ISSUE AND STANDARD OF REVIEW

¶ 6 The sole issue on appeal is whether the trial court erred in granting summary judgment to Enterprise rather than Li, a question that turns on our interpretation of Utah Code section 32A–22–314 and other statutes governing automobile insurance requirements.[1] "We review the district court's order granting summary judgment for correctness and accord no deference to the district court's legal conclusions." *Calhoun v. State Farm Mut. Auto. Ins. Co.*, 2004 UT 56,¶ 11, 96 P.3d 916. Similarly, "[w]e review the district court's interpretation of statutes for correctness, giving no deference to its conclusions." *Mahana v. Onyx Acceptance Corp.*, 2004 UT 59,¶ 13, 96 P.3d 893.

## ANALYSIS

¶ 7 This case presents a pure question of statutory interpretation. The parties

---

1. For convenience, we refer simply to Li unless the context requires a distinction between Li and Li's estate.

present two conflicting interpretations of Utah code section 31A–22–314, which states:

> (1) A rental company shall provide its renters with primary coverage meeting the requirements of Title 41, Chapter 12a, Financial Responsibility of Motor Vehicle Owners and Operators Act, unless there is other valid or collectible insurance coverage.
>
> (2) All coverage shall include primary defense costs and may not be waived.

Utah Code Ann. § 31A–22–314 (2003). The parties' dispute centers on the meaning of the words "primary coverage" and "unless there is other valid or collectible insurance coverage." *Id.* Enterprise interprets these words to mean that rental companies need not provide renters with any coverage whatsoever, so long as there is other coverage available meeting the Act's minimum requirements. Li counters that Enterprise's interpretation renders the word "primary" meaningless, and argues that the statute only allows rental companies to structure their required coverage as secondary or excess to other available coverage.

¶ 8 We agree with both parties to the extent that both interpretations can be reasonably gleaned from the plain language of the statute. However, this existence of two reasonable, yet conflicting, interpretations of the statute renders it ambiguous. *See Derbidge v. Mutual Protective Ins. Co.,* 963 P.2d 788, 791 (Utah Ct.App.1998) ("Ambiguous means capable of two or more *plausible* meanings." (quotations and citations omitted)). Accordingly, to reach the correct interpretation of the statute " 'we seek guidance from the legislative history and relevant policy considerations.' " *State v. Kenison,* 2000 UT App 322, ¶ 10, 14 P.3d 129 (quoting *Nelson v. Salt Lake County,* 905 P.2d 872, 875 (Utah 1995)).

¶ 9 Neither party has provided persuasive legislative history indicating that its position necessarily reflects the legislature's intent. The statute's evolution has been straightforward, and we review it here. As originally enacted in 1994, section 31A–22–314 provided:

> A rental company shall provide its renters with primary coverage meeting the requirements of Title 41, Chapter 12a, Financial Responsibility of Motor Vehicle Owners and Operators Act. All coverage shall include primary defense costs and may not be waived.

Act of March 2, 1994, ch. 316, § 17, 1994 Laws 1521, 1540. In 1998, the legislature passed two separate amendments to section 31A–22–314. The first of these amendments would have changed the statute to read:

> (1) A rental company shall provide its renters with coverage meeting the requirements of Title 41, Chapter 12a, Financial Responsibility of Motor Vehicle Owners and Operators Act.
>
> (2) The coverage required under Subsection (1) shall be excess or secondary coverage to any other valid and collectible insurance of the renter.

Act of March 4, 1998, ch. 325, § 2, 1998 Laws 1205, 1206. The second 1998 amendment expressly superceded the first, and is reflected in the current language of section 31A–22–314. *See* Act of February 19, 1998, ch. 329, § 6, 1998 Laws 1217, 1225. Neither of section 31A–22–314's previous incarnations sheds any particular light on the proper interpretation of the current statute.

¶ 10 Similarly, there are persuasive public policy arguments in favor of each party's interpretation of section 31A–22–314. Supporting Li's argument, there exists a general public policy in favor of the compensation of tort victims. *See, e.g., Watkiss & Saperstein v. Williams,* 931 P.2d 840, 849 (Utah 1996) (relying on public policy "allowing plaintiffs to receive compensation for actionable losses"); *Wilde v. Mid–Century Ins. Co.,* 635 P.2d 417, 425 (Utah 1981) ("Concededly, public policy justifies compensation for injuries suffered at the hand of the tortious conduct of another, insurance or not[.]" (Henriod, R.J., dissenting)). Further, " '[a]s a matter of public policy, ambiguities or inconsistent provisions in insurance contracts are construed against the insurer and in favor of coverage.' " *New West Fed. Sav. & Loan Ass'n v. Guardian Title Co. of Utah,* 818 P.2d 585, 589 (Utah Ct.App.1991) (quoting *Moore v. Energy Mut. Ins. Co.,* 814 P.2d 1141, 1143 (Utah Ct.App.1991)). While this

case presents a matter of statutory rather than contractual interpretation, as a practical matter Enterprise's status as a self-insurer means that it will only pay what the applicable statutes require it to pay. In other words, when it comes to self-insurers, statutory requirements are analogous to the provisions of a traditional contract of insurance and should be interpreted in favor of coverage when ambiguity exists.

¶ 11 In Enterprise's favor, the legislature has determined that $25,000 is an appropriate amount of mandatory coverage under the Act. "This legislative enactment reflects a public policy requiring vehicle owners to carry a *minimum level* of liability coverage to protect innocent victims of automobile accidents." *Speros v. Fricke*, 2004 UT 69,¶ 42, 98 P.3d 28 (emphasis added). Enterprise's interpretation of section 31A–22–314 would ensure that every rental car carries at least this minimum coverage, without doubling the statutory minimum coverage available to those parties injured by an insured motorist who happens to be driving a rental car.

¶ 12 Faced with competing reasonable interpretations and public policies, as well as an unhelpful legislative history, we are nevertheless called upon to determine the correct interpretation of the statute as a matter of law. *See State Farm Mut. Auto. Ins. Co. v. Green*, 2003 UT 48,¶ 44, 89 P.3d 97 ("A matter of statutory interpretation is a question of law that we review on appeal for correctness."). We hold that section 31A–22–314 does not relieve rental companies of their obligation to provide minimum insurance under the Act, even when there exists other valid and collectible coverage. We find Li's interpretation of the plain language of section 31A–22–314 somewhat more convincing in light of the legislature's continued inclusion of the word "primary" in the statute. As Li argues, had the legislature intended section 31A–22–314 to act as an escape clause for rental companies, it would make more sense to require those companies to "provide coverage under the Act" unless other coverage meeting the Act was available. We also note that, historically, section 31A–22–314 has always addressed where rental companies "stand in line" as regards

insurance coverage, and has never explicitly relieved rental companies of their independent insurance obligations as car owners under the Act. While hardly determinative, it seems reasonable to infer that the current version of section 31A–22–314 similarly speaks only to the positioning of coverage provided by rental car companies vis-a-vis other available coverage.

¶ 13 Due to our interpretation of section 31A–22–314, we must reverse the trial court's entry of summary judgment in favor of Enterprise. However, we decline to instruct the trial court to enter summary judgment in favor of Li as Li requests. The issue before the court today addresses one small part of a statutory scheme that has recently been described as "labyrinthine." *Farmers Ins. Exch. v. Versaw*, 2004 UT 73,¶ 16, 99 P.3d 796 ("Utah … has no discrete, self-contained 'financial responsibility law.' Utah's financial responsibility laws are instead scattered throughout multiple titles and sections, pieced together only by reference."). Additionally, we note that Li is no third-party stranger to Enterprise, but rather entered into a lengthy rental agreement with Enterprise. This rental agreement contains numerous provisions addressing indemnification, waiver of coverage, and the like. Enterprise may have a valid defense to responsibility under either other portions of the Utah statutes or its contract with Li, and it must be allowed to pursue any such defense if it so chooses.

## CONCLUSION

¶ 14 Utah Code section 31A–22–314 does not relieve car rental companies of the statutory duty to provide insurance coverage, even when other available coverage meets the minimum statutory requirements. Accordingly, Enterprise is not entitled to summary judgment under section 31A–22–314 and must provide coverage as a self-insurer if coverage is required under the terms of the Act and its contract with Li. Summary judgment is reversed, and the matter remanded for further proceedings consistent with this opinion.

¶ 15 WE CONCUR: PAMELA T. GREENWOOD and GREGORY K. ORME, Judges.