2006 UT 80

**Beiwi LI, Personal Representative of the Estate of Beizhong Li, Deceased, Plaintiff and Respondent,**

v.

**ENTERPRISE RENT–A–CAR COMPANY OF UTAH, a Utah corporation, Shuyu Zhang, Geico Indemnity Company, a Maryland corporation, and John Doe, whose true name is not known, Defendants and Petitioner.**

No. 20050583.

Supreme Court of Utah.

Dec. 5, 2006.

Earl D. Tanner, Salt Lake City, for respondent.

Paul M. Belnap, Joseph J. Joyce, Andrew D. Wright, A. Joseph Sano, Salt Lake City, for petitioner.

DURRANT, Justice:

## INTRODUCTION

¶ 1 This case concerns the insurance obligation of rental car companies under the Financial Responsibility of Motor Vehicle Owners and Operators Act (the "Financial Responsibility Act").[1] The Financial Responsibility Act requires owners of motor vehicles to maintain liability insurance in the amount of at least $25,000 to cover bodily injury or death.[2] Utah Code section 31A–22–314 requires rental car companies to provide their renters with "primary coverage" meeting the requirements of the Financial Responsibility Act "unless there is other valid or collectible insurance coverage." Enterprise Rent–A–Car Company of Utah ("Enterprise") contends that section 31A–22–314 excuses it from providing *any* insurance coverage when there is other valid or collectible insurance coverage amounting to at least $25,000. The estate of Beizhong Li ("Li's Estate") argues that this section exempts

---

[1]. Utah Code Ann. §§ 41–12a–101 to –806 (2005 & Supp.2006).

[2]. *See id.* § 41–12a–301(2) (2005); *id.* §§ 31A–22–302(1)(a), –304(1)(a) (2005 & Supp.2006).

Enterprise only from providing *primary* insurance when there is other valid or collectible insurance coverage, and that absent such other insurance, the minimum liability coverage obligation imposed upon Enterprise by the Financial Responsibility Act remains unaltered by the section. We conclude that the existence of other valid or collectible insurance does not excuse Enterprise from its insurance obligations as a vehicle owner and that this result is dictated by the plain language and statutory context of section 31A–22–314.

## BACKGROUND

¶ 2 The court of appeals reversed the district court's grant of summary judgment. On certiorari, we therefore "recite the facts in a light most favorable to [Li's Estate], the non-moving party below."[3] On July 20, 2000, Li rented a Ford Taurus (the "Taurus") from Enterprise. Li signed a rental agreement (the "Rental Agreement") with Enterprise representing that he had personal automobile insurance meeting the minimum requirements of the Financial Responsibility Act. He initialed the box declining the optional $8 per day supplemental liability protection offered by Enterprise. The rental agreement designated Shuyu Zhang, Li's traveling companion and co-worker, as an additional authorized driver. The next day, while Zhang was driving the Taurus and Li was a passenger, they were involved in a traffic accident that caused Li's death.

¶ 3 Li's Estate filed suit against both Zhang and the unknown driver of a "miss-and-run" vehicle, "John Doe," alleging that the negligence of both drivers caused the accident. It also named Li's personal automobile insurer, Geico Indemnity Company ("Geico"), and Enterprise as additional defendants in the case. In total, Li's Estate identified three insurance providers that could be required to pay damages in the case: American Insurance, as Zhang's liability insurer; Geico, as Li's provider of both underinsured motorist and uninsured motorist coverages; and Enterprise, as the self-insuring owner of the Taurus.

¶ 4 Li's Estate was able to reach settlements on Zhang's liability with Zhang's Insurer, American Insurance, for the liability policy limit of $100,000, and with Li's insurer, Geico, for the policy limit of $100,000 on Li's underinsured motorist coverage. In total, Li's Estate has recovered $200,000 on Zhang's liability. Li's Estate asserts that this does not cover the damages caused by Zhang's negligence, however, and it reserved its claim against Enterprise for an additional $25,000 based on Enterprise's liability coverage on the Taurus. With respect to the claims of Li's Estate against John Doe, Li's Estate settled with Geico for $50,000, half of the $100,000 policy limit on Li's uninsured motorist coverage.

¶ 5 Enterprise then moved for summary judgment, arguing that Utah Code section 31A–22–314 exempts Utah rental car companies from providing liability coverage on their rental vehicles when there is "other valid or collectible insurance" available from the driver's personal automobile insurance policy and that other coverage is sufficient to meet Utah's $25,000 minimum liability coverage requirement. The trial court agreed and granted summary judgment, finding that there was other valid or collectible insurance available in this case.

¶ 6 The court of appeals reversed and remanded, holding that other provisions in the Utah Code require Enterprise to insure its rental vehicles while they are operated on the highways.[4] It held that section 31A–22–314 does not excuse rental car companies from all coverage, but only from providing "primary coverage," as opposed to secondary or excess coverage, when there is "other valid or collectible insurance."[5] The court of appeals thus held that section 31A–22–314 "speaks only to the positioning of coverage provided by rental car companies vis-a-vis

---

**3.** *In re Hoopiiaina Trust,* 2006 UT 53, ¶ 2, 144 P.3d 1129.

**4.** *Li v. Zhang,* 2005 UT App 246, ¶¶ 12–14, 120 P.3d 30.

**5.** *Id.*

other available coverage"[6] and that summary judgment was inappropriate because Li's Estate may be entitled to recover money from Enterprise if, as Li's Estate alleges, Zhang's liability exceeds the policy limit on the primary insurance policy.[7] To arrive at this conclusion, the court of appeals found that the language of section 31A–22–314 was ambiguous and then looked to legislative history and public policy to aid its analysis.[8]

¶ 7 We granted certiorari to consider the effect of Utah Code section 31A–22–314 on the insurance coverage that Utah rental car companies are required by statute to provide. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(a), (5).

### STANDARD OF REVIEW

¶ 8 On certiorari, we review the decision of the court of appeals, not the trial court.[9] Here, we are called upon to review the court of appeals' interpretation of Utah Code section 31A–22–314 and Utah's Financial Responsibility Act. This is an issue of statutory construction, which we review for correctness.[10]

### ANALYSIS

¶ 9 In interpreting the insurance requirements imposed on rental car companies by Utah's statutes, we first turn to familiar canons of statutory construction. Our primary goal in interpreting these statutes is "to evince the true intent and purpose of the Legislature."[11] We do so "by first looking to the statute's plain language, and giv[ing] effect to the plain language unless the language is ambiguous."[12] In conducting this plain meaning analysis, "[w]e read the plain language of the statute as a whole,

and interpret its provisions in harmony with other statutes in the same chapter and related chapters."[13]

¶ 10 In this case, Utah Code section 31A–22–314 can be interpreted only with reference to the broader statutory scheme that imposes motor vehicle insurance requirements on motor vehicle owners. The insurance requirements related to motor vehicles are generally divided between two titles of the Utah Code: Title 41, chapter 12a, the Financial Responsibility of Motor Vehicle Owners and Operators Act, which requires motor vehicle owners to maintain insurance on their vehicles and imposes penalties for noncompliance,[14] and Title 31A, chapter 22, part III, which sets forth specific provisions and coverages that must be included within motor vehicle insurance policies.[15] In conducting this analysis, we discuss the broader requirements of the Financial Responsibility Act before turning to the more specific provisions of Title 31A, including Utah Code section 31A–22–314. Because the statutes relevant to this case have not undergone substantive changes since the accident occurred in 2000, we cite to the statutes as they are presently codified.

I. SECTION 41–12a–301(2) OF UTAH'S FINANCIAL RESPONSIBILITY ACT IMPOSES A DUTY TO MAINTAIN MOTOR VEHICLE INSURANCE ON ALL RESIDENT OWNERS OF MOTOR VEHICLES

¶ 11 We start our analysis of the insurance requirements imposed on Utah rental car companies with section 41–12a–301(2)(a) of the Financial Responsibility Act, which provides as follows: "Every resident owner of a

---

6. *Id.* ¶ 12.

7. *Id.* ¶ 13.

8. *Id.* ¶ 12.

9. *John Holmes Constr. v. R.A. McKell Excavating,* 2005 UT 83, ¶ 6, 131 P.3d 199.

10. *See id.*

11. *Lovendahl v. Jordan Sch. Dist.,* 2002 UT 130, ¶ 20, 63 P.3d 705 (citation and internal quotation marks omitted).

12. *Id.* ¶ 21 (citation and internal quotation marks omitted).

13. *Miller v. Weaver,* 2003 UT 12, ¶ 17, 66 P.3d 592.

14. Utah Code Ann. §§ 41–12a–101 to –806 (2005 & Supp.2006).

15. *Id.* §§ 31A–22–301 to –319.

motor vehicle shall maintain owner's or operator's security in effect at any time that the motor vehicle is operated on a highway or on a quasi-public road or parking area within the state." [16]  Specific exceptions to this requirement are listed in subsection 41–12a–301(5), none of which apply to resident owners of rental cars operated on roadways.[17]  Thus, section 41–12a–301(2)(a) imposes a baseline requirement that Utah rental car companies must maintain security (insurance) on their rental cars.  Like any motor vehicle owner, a rental car company may meet this security requirement by acting as a self-insurer if it meets the requirements of Utah Code section 41–12a–407,[18] but in such cases it will be required to pay benefits as if it were its own insurance provider.[19]  Enterprise has elected to self-insure.

¶ 12 Enterprise does not dispute that section 41–12a–301(2)(a) imposes the same baseline motor vehicle insurance requirements on Enterprise and other rental car companies that it imposes on any other resident motor vehicle owner.  Instead, Enterprise primarily argues that section 31A–22–314 provides specific exceptions from the requirements of section 41–12a–301(2)(a) for rental car companies.  This is an argument that we will address in depth.  However, we first pause to consider Enterprise's novel interpretation of section 41–12a–301(2)(a)'s baseline insurance requirements.

■ ¶ 13 Enterprise asserted at oral argument that the motor vehicle owner's duty to "maintain owner's *or* operator's security" on a vehicle while it is operated on a highway, road, or parking area within the state under section 41–12a–301(2)(a) [20] is satisfied if the owner simply contracts with any person who operates the vehicle specifically to provide that the operator's insurance will apply.  But Enterprise's suggested interpretation is contrary to our interpretation of a vehicle owner's duty to "maintain" security under prior versions of the Financial Responsibility Act.[21]  And it would be at odds with the statute's purpose of placing the responsibility to insure a vehicle on the person defined as the vehicle's *owner* under section 41–12a–103(8).[22]  In *Speros v. Fricke*[23], we described the Financial Responsibility Act as "a comprehensive statutory scheme mandating min-

16.  *Id.* § 41–12a–301(2)(a) (2005).

17.  *Id.* § 41–12a–301(5) (exempting owners of off-highway vehicles, certain farm equipment, electric bicycles, motorized scooters, and personal motorized mobility devices).

18.  *Id.* § 41–12a–103(9)(d) (defining "[o]wner's or operator's security" to include "maintaining a certificate of self-funded coverage under Section 41–12a–407").

19.  *Id.* § 41–12a–407(2) ("Persons holding a certificate of self-funded coverage under this chapter shall pay benefits to persons injured from the self-funded person's operation, maintenance, and use of motor vehicles as would an insurer issuing a policy to the self-funded person containing the coverages under Section 31A–22–302."); *see also* *Chambers v. Agency Rent-A-Car*, 878 P.2d 1164, 1166 (Utah Ct.App.1994) ("Regardless of the form of security selected, the owner must provide the intended beneficiaries the full benefits required by statute." (citation and internal quotation marks omitted)).

20.  Utah Code Ann. § 41–12a–301(2)(a) (2005) (emphasis added).

21.  *See, e.g., Foster v. Salt Lake County*, 712 P.2d 224, 226–27 (Utah 1985)(discussing the duty to insure under the prior "Motor Vehicle Safety Responsibility Act," which required that " '[e]very resident *owner* of a motor vehicle *shall maintain* the security [required by statute] in effect continuously throughout the registration period of the motor vehicle.' " (emphasis added) (quoting Utah Code Ann. § 31–41–4(1) (1953), *repealed by* Ch. 242, § 58, 1985 Utah Laws)); *Chambers*, 878 P.2d at 1166–67 (analyzing an older version of the statute providing that " '[e]very resident owner of a motor vehicle *shall maintain owner's or operator's security* in effect throughout the registration period of the motor vehicle" and stating that "[t]he express language of and the purpose behind Utah's Motor Vehicle Financial Responsibility Act places liability on the self-insurer, as an insurer, to pay certain benefits on behalf of permissive users of its vehicles who injure third parties.' " (emphasis added) (quoting Utah Code Ann. § 41–12a–301(2)(a) (1993))); *Lane v. Honeywell, Inc.*, 663 F.Supp. 370, 375 (D.Utah 1987) ("Public policy as expressed in Utah law is that self-insurers must provide security for damages inflicted by themselves, and *by permissive users* of their vehicles.").

22.  *See supra* note 20; *Speros v. Fricke*, 2004 UT 69, ¶ 42, 98 P.3d 28.

23.  2004 UT 69, 98 P.3d 28.

imum liability coverage for motor vehicles."[24] Moreover, we stated that "[t]his legislative enactment reflects a public policy requiring vehicle owners to carry a minimum level of liability coverage to protect innocent victims of automobile accidents."[25] Thus, the history and language of the owner's duty to maintain security lead us to conclude that this duty is nondelegable.

■ ¶ 14 This conclusion is further reinforced by section 41–12a–302. That section imposes criminal penalties on "[a]ny owner of a motor vehicle on which owner's or operator's security is required under Section 41–12a–301, who operates his vehicle or permits it to be operated on a highway in this state without *owner's security* being in effect."[26] It also imposes criminal penalties on "any other person who operates a motor vehicle upon a highway in Utah with the knowledge that the owner does not have *owner's security* in effect for the motor vehicle," but it provides an exception from the criminal penalty if the operator has security that covers that person's operation of the vehicle.[27] Section 41–12a–302(1) does not excuse a vehicle owner from criminal liability when the vehicle is covered by insurance provided by the operator of the vehicle. Therefore, we conclude that the plain language of the statute imposes on the vehicle's owner the duty to provide liability insurance to cover a vehicle's operation on state roads and that this duty cannot be satisfied by delegating the responsibility to the vehicle's operator.

## II. SECTION 31A–22–314 DOES NOT EXCUSE RENTAL CAR COMPANIES FROM THE DUTY TO INSURE THEIR RENTAL VEHICLES

■ ¶ 15 Having described the motor vehicle owners' duty to insure their vehicles under section 41–12a–301 of the Financial Responsibility Act, we now consider whether Utah Code section 31A–22–314 excuses rent-al car companies from this duty where there is other valid or collectible insurance in an amount that is greater than or equal to the $25,000 minimum liability coverage requirements set forth in Utah Code section 31A–22–304(1)(a). Enterprise argues that it does and that section 31A–22–314 excuses Enterprise from providing insurance benefits to Li's Estate in this case because Li's Estate has already settled with Zhang's insurer for more than $25,000. To address Enterprise's argument, we turn our attention from the broader insurance requirements of section 41–12a–301 of the Financial Responsibility Act to the details of that coverage as provided in Title 31A, chapter 22, part III, which is entitled "Motor Vehicle Insurance."

¶ 16 Title 31A is connected with the Financial Responsibility Act in Title 41 by Utah Code section 31A–22–302, which lists the coverages that must be provided by "[e]very policy of insurance or combination of policies purchased to satisfy the owner's or operator's security requirement of Section 41–12a–301."[28] The two titles are also connected by Utah Code section 41–12a–407(2), which requires self-insurers to pay insurance benefits "as would an insurer issuing a policy to the self-funded person containing the coverages under Section 31A–22–302."[29]

¶ 17 Following either path, motor vehicle owners' duty to insure their motor vehicles includes an obligation to provide the insurance coverages required by Utah Code section 31A–22–302, including "motor vehicle liability coverage under Sections 31A–22–303 and 31A–22–304."[30] Sections 31A–22–303 and –304 provide further details. Section 31A–22–304 sets the minimum policy limits for liability policies. It states, in part, that "[p]olicies containing motor vehicle liability coverage may not limit the insurer's liability under that coverage below ... (1)(a) $25,000 because of liability for bodily injury to or death of one person, arising out of the use of

---

24. *Id.* ¶ 42.

25. *Id.*

26. Utah Code Ann. § 41–12a–302(1) (2005) (emphasis added).

27. *Id.* § 41–12a–302(2) (emphasis added).

28. *Id.* § 31A–22–302 (Supp.2006).

29. *Id.* § 41–12a–407(2) (2005).

30. *Id.* § 31A–22–302(1)(a) (Supp.2006).

a motor vehicle in any one accident."[31] Section 31A–22–303 specifies, among other things, the persons who must be insured under liability policies,[32] and it contains rules for ordering insurance coverages.[33] It provides that where the insurance policy is an owner's policy, the policy must cover permissive users of the motor vehicle.[34] It also allows insurance policies to "provide for the prorating of the insurance under that policy with other valid and collectible insurance" and to "grant any lawful coverage in addition to the required motor vehicle liability coverage."[35]

¶ 18 The provision cited by Enterprise, Utah Code section 31A–22–314, is located at the end of part III of chapter 22 and is one of three sections specific to rental car companies.[36] That section states as follows:

(1) A rental company shall provide its renters with primary coverage meeting the requirements of Title 41, Chapter 12a Financial Responsibility of Motor Vehicle Owners and Operators Act, unless there is other valid or collectible insurance coverage.

(2) All coverage shall include primary defense costs and may not be waived.[37]

¶ 19 Enterprise asks us to hold that section 31A–22–314, which is specific to rental car companies, overrides the more general requirements of section 41–12a–301 by requiring that rental car companies comply with the owners' insurance requirements of the Financial Responsibility Act only when there is no "other valid or collectible insurance coverage" that meets the $25,000 minimum liability coverage requirement in section 31A–22–304(1)(a). Li's Estate counters that Enterprise misreads section 31A–22–314 by ignoring the Legislature's use of the term "primary" to designate the type of coverage that is required by this section and by reading the phrase "other valid and collectible insurance" to incorporate the $25,000 minimum coverage requirement. Li's Estate contends that section 31A–22–314 does no more than to first impose an additional requirement that the coverage required of rental car companies be "primary coverage" and then to remove that requirement when "there is other valid or collectible insurance coverage."

¶ 20 The court of appeals followed the interpretation offered by Li's Estate, concluding that "Utah Code section 31A–22–314 does not relieve car rental companies of the statutory duty to provide insurance coverage, even when other available coverage meets the minimum statutory requirements," but it went beyond the plain language of the statute to reach this conclusion.[38] We agree with the interpretation adopted by the court of appeals, but we determine that this interpretation is evident from the plain language of section 31A–22–314 in light of the larger structure and purpose of the Financial Responsibility Act.

A. *The Legislature's Use of the Term "Primary Coverage" in Section 31A–22–314 Indicates that It Intended to Specify the Position of Insurance Coverage Required of Rental Car Companies in Relation to Other Insurance Coverages*

¶ 21 As we have often stated, we "presume that the legislature used each word [in a statute] advisedly and [we] give effect to each term according to its ordinary and accepted meaning."[39] In conducting a plain language interpretation of section 31A–22–314, we must therefore attribute meaning to the Legislature's use of the word "primary" to modify "coverage." In this case, we note that the combined term "primary coverage" is a well-established term of art that the

---

31. *Id.* § 31A–22–304(1)(a) (2005).

32. *Id.* § 31A–22–303(1)(a), (3), (7).

33. *Id.* § 31A–22–303(2).

34. *Id.* § 31A–22–303(1)(a)(ii)(A).

35. *Id.* § 31A–22–303(2)(a)(i), (ii).

36. *See id.* §§ 31A–22–311 to –314.

37. *Id.*

38. *Li v. Zhang*, 2005 UT App 246, ¶ 14, 120 P.3d 30.

39. *Arredondo v. Avis Rent A Car Sys., Inc.*, 2001 UT 29, ¶ 12, 24 P.3d 928 (citation and internal quotation marks omitted).

Legislature and courts use to refer to the proper ordering of insurance coverages when multiple policies cover the same injury.[40] Primary coverage contrasts with coverage of a different order, such as "secondary" (also referred to as "excess") coverage. *Black's Law Dictionary* defines the synonymous term "primary insurance" as "[i]nsurance that attaches immediately on the happening of a loss; insurance that is not contingent on the exhaustion of an underlying policy. Cf. *excess insurance*." [41]

¶ 22 Given the consistent usage of the term "primary coverage" in the context of Utah insurance law and the absence of another equally plausible explanation for the legislature's inclusion of the word "primary" to modify "coverage" in section 31A–22–314, we will interpret the term "primary coverage" in accordance with its ordinary and accepted meaning. Accordingly, we interpret the first part of subsection 31A–22–314(1) to impose a requirement that rental car companies provide insurance "meeting the requirements of [the Financial Responsibility Act]" that is "primary" in that it attaches immediately upon the happening of a loss and is not contingent on the exhaustion of an underlying policy. This requirement is in addition to the baseline requirements imposed by the Financial Responsibility Act. The second part of subsection 31A–22–314(1) then removes the additional "primary coverage" requirement when "there is other valid or collectible

insurance." Subsection 31A–22–314(2) then imposes a requirement that "all coverage shall include primary defense costs" regardless of whether there is other valid or collectible insurance.[42]

**B. *Excusing Rental Car Companies from Complying with the Financial Responsibility Act Would Be Contrary to the Act's Purpose***

¶ 23 Enterprise next argues that we should interpret section 31A–22–314(1) to have two purposes: first, to impose a requirement that the insurance provided by rental car companies under the Financial Responsibility Act be "primary coverage" and, second, to remove all insurance requirements imposed by the Financial Responsibility Act when "there is other valid or collectible insurance coverage." However, this interpretation implausibly stretches the language of 31A–22–314 and would lead to results inconsistent with the purpose of the Financial Responsibility Act.

¶ 24 First, it seems unlikely that the Legislature would choose to start the section by imposing a requirement on rental car companies that is an addition to those imposed by the Financial Responsibility Act and then take away both the extra "primary coverage" requirement that it just imposed and all of the other baseline requirements imposed on

---

**40.** *See St. Paul Fire & Marine Ins. v. Comm. Union Assurance,* 606 P.2d 1206, 1207 (Utah 1980); *Wright v. Brown,* 574 P.2d 1154, 1154 (Utah 1978); *Am. Cas. Co. v. Eagle Star Ins. Co.,* 568 P.2d 731 (Utah 1977); *Univ. Underwriters Ins. Co. v. Allstate Ins. Co.,* 21 Utah 2d 358, 445 P.2d 772, 773 (1968) (Ellett, J., concurring); *Russell v. Paulson,* 18 Utah 2d 157, 417 P.2d 658, 661–62 (1966); *Nat'l Farmers Union Prop. & Cas. Co. v. Farmers Ins. Group,* 14 Utah 2d 89, 377 P.2d 786, 787 (1963); *see also* Utah Code Ann. § 31A–22–303(2)(b) (2005) (providing "(i) The liability insurance coverage of a permissive user of a motor vehicle owned by a motor vehicle business shall be primary coverage. (ii) The liability insurance coverage of a motor vehicle business shall be secondary to the liability insurance coverage of a permissive user ...."); *id.* § 31A–22–305(6)(c) (Supp.2006) ("[Uninsured motorist c]overage on a motor vehicle occupied at the time of an accident shall be primary coverage, and the coverage elected by a person described [in related subsections] shall be second-

ary coverage."); *id.* § 31A–22–305(10)(b)(iv) ("Underinsured coverage on a motor vehicle occupied at the time of an accident shall be primary coverage, and the coverage elected by a person described [in related subsections] shall be secondary coverage."); *id.* § 31A–22–309(4) (2005) (providing in the context of other personal injury protection provisions that "[w]hen a person injured is also an insured party under any other policy, including those policies complying with this part, primary coverage is given by the policy insuring the motor vehicle in use during the accident"); *Chambers v. Agency Rent–A–Car,* 878 P.2d 1164, 1167 (Utah Ct.App.1994) (holding under prior statutory scheme that "[t]he general rule is that the car owner's insurance is considered to provide primary coverage and that of the particular driver is considered to provide excess or secondary coverage").

**41.** *Black's Law Dictionary* 807 (7th ed.1999).

**42.** Utah Code Ann. § 31A–22–314(2) (2005).

rental car companies by the Financial Responsibility Act when there is "other valid or collectible insurance." It is more logically consistent to read the statute as specifying that all the insurance required from rental car companies under the Financial Responsibility Act is to be primary "unless there is other valid or collectible insurance."

¶ 25 Second, excusing rental car companies from providing coverage when there is other available coverage is contrary to the language and purpose of the Financial Responsibility Act. Unless we took the further step of implying minimum coverage requirements into the "other valid or collectible insurance language," Enterprise's interpretation would have the drastic effect of excusing a whole class of motor vehicle owners from the most basic requirements of the Financial Responsibility Act without ensuring that similar coverage is available from another source. Without minimum coverage requirements limiting what constitutes "other valid or collectible insurance," rental car companies would be wholly excused from paying insurance benefits even if the amount of the "other valid or collectible insurance" was insufficient to meet the minimum insurance requirements set by the Legislature. Such a result would undermine the overarching purpose of the Financial Responsibility Act by opening a hole in the safety net that requires every owner to provide a minimum of $25,000 in liability coverage for bodily injury to one person. If the Legislature intended section 31A–22–314 to have such a drastic effect, we would expect the Legislature to make a clear statement to that effect rather than combining a complete escape clause for rental car companies with a provision that is otherwise aimed at ordering insurance obligations.

¶ 26 Enterprise avoids ascribing this unlikely interpretation to section 31A–22–314 by assuming that the "other valid or collectible insurance" language incorporates an implicit requirement that the other coverage meet Utah's minimum coverage requirements. But in doing so, it ignores the plain language of the statute, which does not appear to contemplate monetary coverage requirements. Further, we note that by adding the $25,000 minimum requirement to the "other valid or collectible insurance" language, Enterprise interprets section 31A–22–314 as providing an "excess-escape" clause for rental car companies. Enterprise's interpretation would allow rental car companies to pay only amounts that are in excess of the amount provided by the operator of the vehicle but would cap that amount at the statute's minimum coverage limits, allowing rental car companies to "escape" from covering any remaining liability.

¶ 27 We consider it unlikely that the Legislature intended this result where it has clearly provided for excess-escape clauses in other sections of Utah's motor vehicle insurance statutes. Notably, the Legislature has allowed "motor vehicle businesses" to include excess-escape clauses in their insurance policies when they loan their vehicles to permissive users not employed by the business,[43] but does not include rental car companies in the definition of "motor vehicle business." [44] We will not make an interpretive leap to reach a result that the Legislature could have easily made explicit using language that it has employed to benefit other classes of motor vehicle owners.

¶ 28 We consider it much more likely that the Legislature intended section 31A–22–314 to do no more than specify the priority of the insurance coverage and defense costs required of rental car companies relative to the driver's insurance and other insurance that may be available to cover the same liabilities. We hold that section 31A–22–314 first imposes a requirement that all the cov-

---

43. *See id.* § 31A–22–303(2)(a)(iii) ("A policy containing motor vehicle liability coverage ... may: ... (iv) if issued to a motor vehicle business, restrict coverage afforded to anyone other than the motor vehicle business or its officers, agents, or employees to the minimum limits under Section 31A–22–304, and to those instances when there is no other valid and collectible insurance with at least those limits, whether the other insurance is primary, excess, or contingent.").

44. *Id.* § 31A–22–301(2) (" 'Motor vehicle business' means a motor vehicle sales agency, repair shop, service station, storage garage, or public parking place.").

erage required of rental car companies by the Financial Responsibility Act is to be primary coverage, and removes that requirement when there is other "valid and collectible insurance coverage." It then imposes the primary defense obligation on rental car companies regardless of whether there is other valid or collectible insurance.

¶ 29 Our interpretation does not, as Enterprise argues, read into section 31A–22–314(1) a substantive requirement that Enterprise provide "secondary coverage" when "primary coverage" is not required. Because we interpret section 31A–22–314 to speak only to the ordering of insurance coverages, the broader coverage that is required of rental car companies is that required of all motor vehicle owners by the Financial Responsibility Act. The statutes defining the required coverage contain rules for ordering coverages.[45] To the extent section 31A–22–314 does not change the ordering rules, those rules apply to rental car companies.

## CONCLUSION

¶ 30 It is clear from the plain language of Utah Code section 31A–22–314 and related statutes that the Legislature did not intend the availability of other valid or collectible insurance coverage to excuse rental car companies from maintaining insurance coverage on their vehicles in accordance with the requirements of Utah's Financial Responsibility of Motor Vehicle Owners and Operators Act. Rather, the plain language of section 31A–22–314 directs that the coverage required of rental car companies under the Financial Responsibility Act is to be "primary coverage"[46]—coverage that "attaches immediately on the happening of a loss" and "is not contingent on the exhaustion of an underlying policy"[47]—unless there is "other valid or collectible insurance coverage."[48] Where there is other valid or collectible insurance, rental car companies are subject to the same ordering rules under the Financial Responsibility Act as other owners of motor

vehicles. We therefore affirm the result reached by the court of appeals.

¶ 31 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT's opinion.

45.  *See id.* § 31A–22–303(2).

46.  Utah Code Ann. § 31A–22–314 (2005).

47.  *Black's Law Dictionary* 807 (7th ed.1999).

48.  Utah Code Ann. § 31A–22–314.